# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 13-95T

(Filed: September 25, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| **ARMANDO SANDOVAL LUA, et al.,** | ) | Tax case; effectiveness of taxpayers' consent to assessment of taxes without notice of deficiency; assessment within statutory limitations period; payment of tax rather than deposit of funds |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Sean H. Colon, Woodland, California, for plaintiffs.

S. Starling Marshall, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Caroline D. Ciraolo, Acting Assistant Attorney General, David I. Pincus, Chief, Court of Federal Claims Section, and Mary M. Abate, Assistant Chief, Court of Federal Claims Section, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiffs Armando Sandoval Lua and Yadira Sandoval ("taxpayers") seek a refund of income taxes paid in 2008 after an audit by the Internal Revenue Service ("IRS") of their 2003 and 2004 tax returns. Pending before the court are the parties' cross-motions for summary judgment. Def.'s Mot. for Summary Judgment, ECF No. 56-1 ("Def.'s Mot."); Pls.' Cross-Mot. for Summary Judgment and Resp. to Def.'s Mot. for Summary Judgment, ECF No. 59 ("Pls.' Cross-Mot."). The motions have been briefed, and a hearing was held on September 16, 2015. Because plaintiffs ultimately paid the amount of tax appropriately assessed and properly due, they are not entitled to a refund.

# BACKGROUND[1]

Plaintiffs timely filed tax returns for the 2003 and 2004 tax years. Compl. ¶ 5.  On the returns for those years, Mr. Sandoval Lua listed his occupation as "Satel[l]ite Dish Inst[aller]," and Mrs. Sandoval reported that she was a "Warehouse Worker." Def.'s App. A-16, -25.[2]  The IRS subsequently audited their returns and in that connection taxpayers met with Terry Gann, an IRS employee.  During one of those meetings on October 19, 2007, Mr. Gann explained his projected adjustments to the plaintiffs' 2003 and 2004 income.  Pls.' App. A-4; *see also* Compl. ¶ 12.  Also at this meeting, plaintiffs signed Form 4549, Income Tax Examination Changes, for both tax years, waiving their right to a notice of deficiency.  Def.'s App. A-138 to -139, A-141 to -142; Compl. ¶ 12.[3]  At that meeting, Mr. Gann indicated that plaintiffs were liable for tax deficiencies of $60,274 and $87,566 for the 2003 and 2004 years.  Def.'s App. A-138, -141.  Mr. Gann had reached that conclusion because he considered that taxpayers had not been reporting all the income received from the satellite dish installation business.  *See* Pls.' App. A-2 to -4.  Based on Mr. Gann's comments, plaintiffs believed their returns were "closed." Compl. ¶¶ 13-14.  Additionally, on October 26, 2006, plaintiffs signed Form 872, Consent to Extend the Time to Assess Tax, consenting to extension of the limitations period for the 2003 tax year until December 31, 2008.  Def.'s App. at A-67; Compl. ¶ 10.  The validity of this consent is not disputed.

At some point just after the meetings with Mr. Gann, plaintiffs retained Mr. Sean Colon to represent them.  On November 1, 2007, Mr. Colon called Mr. Gann asking for audit reconsideration.  Pls.' Mot. at 14.  On the next day, November 2, 2007, Mr. Colon wrote a letter to Mechelle Palace, a group manager for the IRS, who was Mr. Gann's supervisor, confirming the request for audit reconsideration.  Def.'s App. A-144; *see also* Compl. ¶ 14.[4]  On November

---

[1]The following recitation of facts is taken from the parties' pleadings and filings related to the government's motion for summary judgment and plaintiffs' cross-motions, particularly the documentary materials submitted with the parties' filings.

[2]References to the sequentially paginated appendix submitted in support of the government's motion for summary judgment shall be to Def.'s App. "A-__." References to the sequentially paginated appendix to plaintiffs' cross-motion shall be to "Pls.' App. A-__."

[3]Defendant's appendix contains two pages identified as A-138 and two pages identified as A-141.  The citations in text are to the first of each of these so-numbered pages, located in ECF No. 56-3.

[4]Defendant's appendix contains two pages identified as A-144.  All citations in text are to the first of these so-numbered pages, located in ECF No. 56-3.

26, 2007, the IRS assessed deficiencies for 2003 and 2004.  Def.'s App. A-3, -9; *see also* Pls.' Mot. at 13.[5]  The audit reconsideration was, however, granted.  Def.'s App. A-124.[6]

After lengthy communications with, and provision of information to, IRS agents, and taking into account the audit reconsideration, plaintiffs filed amended tax returns in June of 2008.  Def.'s App. A-138 to -140; Compl. ¶ 24.[7]  The amended returns sought abatements of the assessments, but also included two checks for the IRS.  Def.'s App. A-138.  One check was for $39,445.38 to be applied to the 2003 tax year, and the other was for $57,001.25 to be applied to the 2004 tax year.  *Id*.  The checks were accompanied by a letter from Mr. Colon stating that "any overpayment should be applied" to other tax years.  *Id*.  Between September 2008 and September 2009, the IRS granted most of the abatements sought, but not all.  Def.'s Mot. at 6, App. at A-182, -199, -214.[8]

In 2010, the plaintiffs filed a second set of amended returns for the 2003 and 2004 tax years, seeking a return of the money remitted in 2008.  Compl. Ex. 1 at 3-4; Def.'s Mot. at 7.  They argued (1) that they withdrew their consent in Form 4549 to be assessed without a notice of deficiency, and that they did so before the waiver was accepted by the appropriate IRS official; (2) that the funds remitted in 2008 were an overpayment because they were consigned after the statute of limitations for assessment had expired; or (3) that these funds remitted were mere deposits, not payments.  Compl. Ex. 1 at 5-12.  The IRS disallowed these claims in 2012.  Def.'s

---

[5]Taxpayers received Form Letters 987 on November 5 and 7, 2007, notifying them that their Forms 4549 for the 2003 and 2004 tax years had been accepted.  Compl. ¶¶ 16, 17.  These letters were on a form last revised in December 2005, which taxpayers allege was outdated because a revised form of the letter had been issued in June 2007.  Notwithstanding taxpayers' allegations, however, this circumstance has no material effect on the issues in this case.

[6]Defendant's appendix contains two pages identified as A-124.  The citation in text is to the second of these so-numbered pages, located in ECF No. 56-4.

[7]This citation to Def.'s App. A-138 and all succeeding citations to that page, are to the second of these so-numbered pages, located in ECF No. 56-4.

[8]The audit reconsideration "eventually led to the IRS's abating all but $1,965 of the $72,831 total abatements plaintiffs sought on the amended returns filed in 2008."  Def.'s Mot. at 17 (citing Def.'s App. A-214).
     Roughly contemporaneously, an audit by IRS agents had produced changes to taxpayers' return for 2005, but taxpayers had not waived their right to a notice of deficiency for that tax year.  Taxpayers ultimately petitioned the Tax Court for redetermination of the IRS' assessed tax deficiency for 2005 arising from allegedly unreported income from their satellite installation business.  *See Sandoval Lua v. Commissioner*, T.C.M. (CCH) 2011-192, 2011 WL 3518160 (2011).  Based upon facts established by stipulation and at trial, the Tax Court made determinations of taxpayers' gross receipts and other income, along with the expenses that were allowable deductions, for the 2005 tax year.  *See id*., 2011 WL 3518160, at *3-*4.

Mot. at 8, App. A-234, -240, -245 to -246.  On February 4, 2013, plaintiffs filed this action, asserting the same claims.

## STANDARDS FOR DECISION

### A. *Jurisdiction*

This court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), "to adjudicate claims for a refund of federal taxes." *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002).  That jurisdiction is subject to the requirements of the Internal Revenue Code, which provides in pertinent part that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. ("I.R.C.") § 7422(a).  A claim for refund or credit must "set forth in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the Commissioner [of Internal Revenue] of the exact basis thereof." 26 C.F.R. ("Treas. Reg.") § 301.6402-2(b)(1).

"Courts have long interpreted § 7422(a) and Treasury Reg. § 301.6402-2(b)(1) as stating a 'substantial variance' rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000).  A "legal theory 'not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated.'" *Id.* (quoting *Burlington N., Inc. v. United States*, 684 F.2d 866, 868 (Ct. Cl. 1982)); *see also Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1139 (Fed. Cir. 1983); *Heger v. United States*, 103 Fed. Cl. 261, 263 (2012).

### B. *Burden of Proof*

Although claims must originally be presented to the IRS, a tax refund suit is a *de novo* proceeding in which the taxpayer bears the burden of proving his or her case by a preponderance of the evidence.  *See Gingerich v. United States*, 77 Fed. Cl. 231, 240 (2007) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932), *modified by* 284 U.S. 599 (1932); *Rockwell v. Commissioner*, 512 F.2d 882, 885 (9th Cir. 1975) (Duniway, J.); *George E. Warren Corp. v. United States*, 141 F. Supp. 935, 940 (Ct. Cl. 1956)); *see also Ebert v. United States*, 66 Fed. Cl. 287, 291 (2005).

### C. *Summary Judgment*

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC").  "The moving party carries the burden of establishing that no genuine issue of material fact exists." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968 (Fed. Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  "A 'genuine' dispute is one that 'may reasonably be resolved in favor of either party.'" *Id.* at 968

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  "A material fact is one that 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).  When deciding whether there is a genuine issue of material fact, the court draws all inferences in the light most favorable to the non-moving party.  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).  If no rational trier of fact could find for the non-moving party, a genuine issue of material fact does not exist and summary judgment may be granted.  *Id.*

When considering cross motions for summary judgment, "each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered."  *Marriott*, 586 F.3d at 968-69 (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

## ANALYSIS

The taxpayers renew their contention that they withdrew their consent to assessment of taxes without notice of deficiency, essentially arguing that the payments they made in 2008 should be refunded because no valid assessment had ever been issued.  Pls.' Cross-Mot. at 49.  Taxpayers relatedly assert that the remittances they made in 2008 came after the relevant limitations period on assessments had expired.  *Id.* at 60.  Finally, they also contend that the funds they consigned in 2008 were deposits and not payments of tax.  *Id.* at 52.  The government counters that (1) there is no evidence that taxpayers withdrew their waiver of a notice of deficiency, (2) taxpayers paid agreed amounts of their tax liabilities years ago within the periods for assessment, and (3) taxpayers cannot show that the amounts of tax that they ultimately paid were not legally due.  Def.'s Mot. at 16-23.

A.  *Consent to Assessment Without Notice of Deficiency*

The Internal Revenue Code prevents the government from assessing a deficiency upon taxpayers without providing notice of the proposed deficiency.  I.R.C. § 6213(a).  Nonetheless, a "taxpayer may . . . by a signed notice in writing filed with the district director waive the restrictions on the assessment and collection of the whole or any part of the deficiency."  Treas. Reg. § 301.6213-1(d); *see also* I.R.C. § 6213(d).  After the district director acts on a waiver, it "cannot be withdrawn" by the taxpayer.  Treas. Reg. § 301.6213-1(d).

Plaintiffs signed Form 4549 on October 19, 2007, which included a waiver of the right to notice of proposed deficiency,[9] and the IRS thereafter assessed deficiencies without notice on November 26, 2007.  Compl. ¶ 12.

The taxpayers argue that they withdrew their Form 4549 consent on either November 1 or 2, 2007.  Pls. Cross-Mot. at 37-39.  As evidence of withdrawal, they point to the letter written by their counsel, Mr. Colon, to an IRS manager, Ms. Palace, on November 2, 2007.  Def.'s App. A-144.  Plaintiffs argue that this letter contains a request for withdrawal and proves that Mr. Colon requested withdrawal during a telephone call with IRS agent Gann on the day before, *i.e.*, November 1, 2007.  This letter, however, does not provide evidence of withdrawal.  The letter neither refers to Form 4549 nor does it address consent, waivers, or notice.  Def.'s App. A-144.  Instead, the letter merely requests "audit reconsideration."  *Id.*[10]  Although the letter refers to a telephone call on November 1, 2007 with Mr. Gann, the letter shows only that Mr. Colon asked for audit reconsideration during that call.  In sum, the letter cannot be construed as evincing a withdrawal of consent to assessment without notice of deficiency.

Additionally, taxpayers argue that the government conceded this issue at a status conference held earlier in this case.  *See* Pls.' Cross-Mot. at 39 (citing Hr'g Tr. 17:3 to 19:23 (Apr. 16, 2014)).  The cited discourse occurred during a discussion of when, if ever, the IRS' initial audit had been "closed," subject to the later audit reconsideration, along with when taxpayers had remitted funds and when most of the abatements were allowed.  Hr'g Tr. 16:17 to 20:15 (Apr. 16, 2014).  The court has never understood government's counsel to have waived this issue.  *Cf. Genereux v. Raytheon Co.*, 754 F.3d 51, 57-58 (1st Cir. 2014) (finding plaintiff waived an issue at a status conference when court stated its understanding that the issue was not presented, and plaintiff repeatedly affirmed the court's understanding that issue was not presented).

In short, taxpayers have offered no evidence that they withdrew their consent waiving notice of deficiency.[11]  These circumstances are analogous to those addressed by the Court of Claims in *Montgomery Coca-Cola Bottling Co. v. United States*, 615 F.2d 1318, 1327-28 (Ct. Cl. 1980), where the court commented that "[t]he subjective intent testimony of the plaintiff can

---

[9]The form contained the following waiver: "Consent to Assessment and Collection – I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report.  Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law."  Def.'s App. A-139, -142 (the first-designated of these pages in the appendix).

[10]The relevant part of the letter says: "I am responding on behalf of the above referenced taxpayers regarding the audit reconsideration. . . .  A request was made to Mr. Terry Gann on November 1, 2007 for reconsideration but apparently he felt that it was a laughing matter . . . ."  Def.'s App. A-144.

[11]Because there is no evidence of withdrawal, the court does not need to address plaintiffs' arguments about when the IRS district director "accepted" Form 4549.

only be seriously considered to the extent it is consistent with objective evidence. . . .  '[W]here such testimony is in conflict with contemporaneous documents[,] we can give it little weight, particularly when the crucial issues involve mixed questions of law and fact.'" (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 369 (1947)) (internal citations omitted).  Consequently, there is no genuine dispute of material fact on this issue and the government prevails on summary judgment respecting this matter.[12]

      B.  *Whether the 2008 Remittances Came After the Relevant Limitations Period Had Expired*

A taxpayer is not entitled to a refund unless he or she can show an overpayment of taxes. *Lewis*, 284 U.S. at 283.  An "overpayment" is "any payment in excess of that which is properly due."  *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947).  "The term 'overpayment' includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto."  I.R.C. § 6401(a).  Taxes may be properly due even if the IRS does not "assess" them upon the taxpayer, since tax liability generally arises automatically by statute.  *See Principal Life Ins. Co. v. United States*, 95 Fed. Cl. 786, 790-91 (2010) (explaining how tax liability is fixed by statute, even if the government never makes an administrative assessment).

The government typically has three years after the filing of a return to assess or collect taxes for a tax year.  I.R.C. § 6501(a).  That three-year period is extended to six years if a "taxpayer omits from gross income an amount properly includible therein" and "such amount is in excess of 25 percent of the amount of gross income stated in the return."  I.R.C. § 6501(e)(1)(A)(i).

In this instance, taxpayers assert that the three-year limitation period applies for the 2003 and 2004 tax years, and that these periods expired on April 15, 2007 and April 15, 2008, respectively.  Pls.' Cross-Mot. at 60-61.  According to them, the checks they remitted on June 26, 2008 are therefore overpayments because the government collected them too late.  In response, the government argues that the end of the limitation period for 2003 was actually December 31, 2008, because plaintiffs signed Form 872 in 2006, extending the limitations period.  Def.'s Reply at 10-11, ECF No. 65.  The government also avers that the limitations

---

[12]Plaintiffs' brief also suggests that the taxpayers' consent to Form 4549 was invalid because it was induced by the IRS agent's statements that it was "too late" to redo returns, that the case was "closed," and that the IRS would make additional assessments if they did not sign.  Pls.' Cross-Mot. at 44-45.  Plaintiffs' contentions fail for two reasons.  First, plaintiffs did not present this argument to the IRS prior to this litigation, Compl. Ex. 1 at 3-12 (showing plaintiffs' 2010 returns and argument to the IRS, which argue only that consent was withdrawn after being given), and thus the substantial variance doctrine prevents the court from considering it now.  Second, even if this argument was properly before the court, it is unavailing.  The cited statements, even if true, are not evidence of misrepresentations or duress.  *See Price v. Commissioner*, 43 T.C.M. (CCH) 18, 1981 WL 11074 (1981) (finding valid consent where IRS agent said he would propose different findings if taxpayer did not agree to waiver) (citing *Burnet v. Chicago Ry. Equip. Co.*, 282 U.S. 295 (1931)).

period for 2004 was extended to six years because the taxpayers originally reported adjusted gross income of $51,848 on their 2004 tax return, Def.'s App. A-24, but in 2008, they submitted amended returns for 2004 reporting adjusted gross income of $183,862, which is more than 25 percent of $51,848.  Def.'s Reply at 11; Def.'s App. A-158 to -159.

The court concurs with the government.  The taxpayers do not dispute that they signed Form 872 and extended the limitations period for the 2003 tax year "until December 31, 2008." Compl. ¶ 10.  Nor do plaintiffs dispute that their amended return of $183,862 is more than 25 percent of their originally reported amount.  Pls.' Cross-Mot. (failing to address defendant's "25 percent" contention); Pls.' Reply, ECF No. 67 (same).  Accordingly, the statute of limitations applicable to the 2003 and 2004 tax years was December 31, 2008 and April 15, 2011, respectively.

Taxpayers' briefs offer the further contention that government's arguments respecting the limitations period for assessments in effect constitute an affirmative defense to taxpayers' refund claim, and the government waived the defense by failing to raise it in the answer.  This contention fails because the government's position on the limitations period is not an affirmative defense.  "An affirmative defense is an assertion raising new facts and arguments that, if proven, defeat the plaintiff's claim even if the allegations in her complaint are true." *Sterten v. Option One Mortg. Corp.*, 479 F. Supp. 2d 479, 482 (E.D. Pa. 2007), *aff'd sub nom. In re Sterten*, 546 F.3d 278 (3d Cir. 2008).  In contrast, "a matter that merely negates an element of the plaintiff's prima facie case is not an affirmative defense." *Id.* at 483.

In pertinent part, taxpayers' refund theory is that they overpaid because they remitted funds after the limitations period had expired.  Pls.' Cross-Mot. at 61.  It is therefore part of the plaintiffs' prima facie case to show the limitations period had expired, and consequently the government's argument regarding the statute of limitations is not an affirmative defense.[13]

There is no evidence that the plaintiffs' tax liability was not fixed and properly due in June of 2008, subject to abatements, and thus there is no evidence that plaintiffs overpaid once the abatements are taken into account.  Because there is no genuine dispute of material fact on

---

[13]The court also notes that "'[f]ailure to raise an affirmative defense by responsive pleading does not always result in waiver.'" *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005) (quoting *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997)). The Federal Circuit has observed that the purpose of Fed. R. Civ. P. 8(c), which is identical to RCFC 8(c), "'is to give the opposing party notice of the affirmative defense and a chance to respond.'" *Id.*  In this instance, the issue of whether the statute of limitations on assessments had expired was first raised in plaintiffs' complaint, Compl. ¶ 50, and plaintiffs manifestly have had fair opportunity to address this issue.  Thus, even if it were an affirmative defense, the court would find no waiver.

this issue, the government prevails.[14]

### C. *Whether Plaintiffs' 2008 Remittances Were Payments or Deposits*

Taxpayers who anticipate owing money to the government may file a "deposit" with the government. *Principal Life*, 95 Fed. Cl. at 796. A deposit benefits a taxpayer by stopping the running of interest or penalties on underpayment. *Id.* Unlike a payment, a deposit does not prevent a taxpayer from challenging a deficiency in Tax Court, *Baral v. United States*, 528 U.S. 431, 439 n.2 (2000), nor does it trigger the statute of limitations for filing a refund claim, *Rosenman v. United States*, 323 U.S. 658, 662-63 (1945). And if it is later determined that no tax is due to the government, the taxpayer can simply ask the government to return the money. *Principal Life*, 95 Fed. Cl. at 797.

The concept of a deposit was first recognized in the Supreme Court's decision in *Rosenman*, which found a basis for the concept in implications from the Internal Revenue Code. *See Principal Life*, 95 Fed. Cl. at 796-97. The term "deposit" at that time appeared nowhere in the Code. *Id.* The Federal Circuit later interpreted *Rosenman* in *New York Life Ins. Co v. United States*, 118 F.3d 1553, 1556 (Fed. Cir. 1997), concluding that a "circumstances" test controlled the question of whether a remittance was a deposit. Thereafter, Congress definitively addressed the matter by adding Subsection 6603(a) to the Code in 2004,[15] providing that a "taxpayer may make a cash deposit with the Secretary which may be used by the Secretary to pay any tax . . . which has not be assessed at the time of deposit. Such a deposit shall be made in such a manner as the Secretary shall prescribe." I.R.C. § 6603(a). Today, this Code provision controls the question of whether a remittance is a "deposit," not *New York Life*. *See Principal Life*, 95 Fed. Cl. at 799 (applying Rev. Proc. 2005-18 and declining to apply *New York Life*'s circumstances test); Rev. Proc. 2005-18 § 10 ("This revenue procedure applies to deposits made after October 22, 2004.").

Section 6603(a) was explicated by Revenue Procedure 2005-18, which provides that a taxpayer may make a deposit by filing a "written statement designating the remittance as a deposit." Rev. Proc. 2005-18 § 4.01(1). "[A] remittance that is not designated as a deposit (an 'undesignated remittance') will be treated as a payment and applied by the Service against any outstanding liability for taxes, penalties or interest." Rev. Proc. 2005-18 § 4.01(2).

The taxpayers here assert that the funds remitted in 2008 were deposits, not payments, under the *New York Life* circumstances test. They further contend, without argument or citations, that Subsection 6603(a) and Rev. Proc. 2005-18 do not apply. This court disagrees.

Revenue Procedure 2005-18 controls this matter because the remittances were made in 2008. *See Principal Life*, 95 Fed. Cl. at 799 (finding Rev. Proc. 2005-18 controlling on similar

---

[14]Plaintiffs' brief also argues (in one sentence) that certain equipment reimbursements received by them were not income. Pls.' Cross-Mot. at 62. This argument was not presented in plaintiffs' refund claims to the IRS, and thus the substantial variance rule bars it now.

[15]*See* The American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 842, 118 Stat. 1418, 1598-1600.

facts).  Moreover, taxpayers offer no evidence that their 2008 remittance complied with the terms of the Revenue Procedure.  The word "deposit" appears nowhere in plaintiff's submissions with the 2008 checks.  Def.'s App. A-137 to -138.  Drawing all inferences in favor of the plaintiffs, nothing about the 2008 submissions can be construed as designating the 2008 checks as deposits. Instead, the 2008 submissions only support the government's argument, because the checks were accompanied by a letter saying that any "overpayment" created by the checks should go to other tax years.  Def.'s App. A-137 to -138.

Because there is no evidence that the 2008 checks were deposits, there is no genuine dispute of material fact on this issue, and the court accordingly accepts the government's position.  Overall, the court concurs with the government that taxpayers are not due any refund. They have paid the taxes that were due and properly assessed for the tax years in question, 2003 and 2004, but no more.

## CONCLUSION

For the reasons stated, the government's motion for summary judgment is GRANTED, and the plaintiffs' cross-motion for summary judgment is DENIED.  The clerk shall enter judgment for the government and against the plaintiffs.

No costs.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge